## NATHANIEL C. WYMAN

*vs.*

## EUGENE W. WHITEHOUSE, administrator.

### Kennebec. Opinion March 8, 1888.

*Husband and wife. Promissory notes. Married women.*

A promissory note, given by a wife to her husband in the year 1853, is void. It cannot be collected against her estate after her death.

The act of the parties authorizing a person to witness the note, in the year 1868, does not give it validity, there being no new contract or new consideration for a contract.

ON report.

*S. S. Brown and L. D. Carver*, for plaintiff.

In view of the fact that it is conclusively proven by the evidence, that all the use which the intestate ever had of his wife's estate was in common with her, there can arise no implied promise on his part to repay anything which he may have enjoyed in common with his wife. He is presumed to be acting for her. *Norton* v. *Craig*, 68 Maine, 275.

Money had and received, the only proper form of action to bring in this case. *Merrill* v. *Crossman*, 68 Maine, 413; R. S., c. 66, § 14.

A writ against one personally may be amended by leave of court so as to charge him in his capacity as administrator. *Lester* v. *Lester*, 8 Gray, 437 ; *Metcalf* v. *Yeaton*, 51 Maine, 198 ; *Babcock* v. *Fowles*, 32 Maine, 592 ; *Phillips* v. *Bridge*, 11 Mass. 242 ; *Tenney* v. *Prince*, 4 Pick. 385.

A negotiable promissory note in the hand of a *bona fide* holder indorsed before dishonor is not subject of set-off. *Trafford* v. *Hall*, 7 R. I. 104 ; 44 Maine, 271 ; 48 Maine, 163 ; 35 Maine, 324 ; 16 Maine, 177 ; 20 Maine, 175 ; 17 Maine, 267.

Indorsement presumed to have been made at date or delivery of note to payee ; *Parker* v. *Tuttle*, 41 Maine, 349 ; *Hersey* v. *Elliot*, 67 Maine, 526 ; 63 Maine, 405. Presumed to have been endorsed before maturity. Party denying this must prove it ; nor without proof that it was endorsed when it was overdue can he avail himself of the equities of defence. 2 Parsons' Notes & Bills, 9, cases there cited.

Where husband and wife live upon her farm and he carries it on for the common support, his possession is her possession. He is her agent in all acts in reference to her property. *Norton* v. *Craig*, 68 Maine, 275. Counsel will not be allowed to argue to the court in Banc against anything admitted as a fact in making up the report at *nisi prius*. *Alden* v. *Goddard*, 73 Maine, 345.

The instrument offered in evidence by the plaintiff to support his claim to recover in this action, is a valid and negotiable promissory note. The time of its payment is therein made certain. 1 Parsons' Notes & Bills, p. 39, 40. The promise to pay and the amount to be paid are absolute and without contingency. 1 Parsons' Notes & Bills, p. 42. Benjamin Chalmer's Digest, 12 ; and not from a limited fund but from her entire estate. In form and substance it has all the requisites of a negotiable promissory note. The memorandum thereto attached does not vary its terms or affect its form or character. Benjamin Chalmer's Digest, 14, and illustrations, *Treat* v. *Cooper*, 22 Maine, 203 ; 64 Md. 120 ; 39 Wise, 138.

It is a well known rule of law governing such cases, that a promissory note is to be regarded as made, when delivered ; although it may have been written and signed by the maker long

before that time. The reason of the rule being that the maker has it in his power at any time before delivery, to destroy the writing or at the last moment to refuse to deliver it to the payee therein named. Contract is inchoate and revocable until delivery. Benjamin Chalmer's Digest, 58 ; *Burson* v. *Huntington*, 21 Mich. 415 ; *The First National Bank* v. *Strong*, 72 Ill. 559 ; 118 Mass. 537 ; 1 Parsons' Notes & Bills, 48.

The note is dated February 23, 1853, and in the absence of all other testimony in the premises, the presumption would arise that its date truly sets forth the time when in fact it was made and delivered to the payee. 26 Maine, 295 ; 7 Gray, 543 ; 57 Md. 54.

It is entirely competent however to show by extrinsic evidence that the note was in fact made and delivered at some other time than that indicated by its date. Benjamin Chalmer's Digest, 23 ; 32 Maine, 524 ; 13 East, 517 ; 71 N. Y. 435 ; 72 Ill. 21 ; 1 Parsons' Notes & Bills, 41 ; 17 Ala. 45 ; 24 Miss. 424. But not to invalidate the title of a *bona fide* holder for value. 58. Georgia, 94 ; *Huston* v. *Young*, 33 Maine, 85.

A note may be antedated or postdated without affecting its validity or negotiability. Benjamin Chalmer's Digest, 23 ; 4 Camp. 97 ; 9 Exch. 684 ; 2 L. R. Ex. D. 265 ; 14 Hun. (N. Y.) 155. In case *Nathaniel Bryant, Admr.* v. *Warren Merrill,* 55 Maine, 515, the court did not rule directly upon the point in question, but did rule that the law was not retrospective in its effect and did not apply to promissory notes made by a married woman before the enactment of the law in question.

In case *Allen Mayo et al.* v. *Henry P. Hutchinson et al.*, 57 Maine, 546, Chief Justice APPLETON, says, referring to the laws above mentioned : "The wisdom or expediency of this act is a matter solely for the legislature. Its language is most general and there can be no reasonable doubt of its meaning. A contract of suretyship is a lawful contract and for a lawful purpose ; it is valid and binding on a married woman."

In the case of *Blake* v. *Blake*, 64 Maine, 177, the court, referring to this law says : "The wife can contract for any lawful purpose. No limitation is imposed upon her general right to

contract, save that the purpose be lawful. No restrictions are intimated as to the person or persons with whom the contract for lawful purposes may be made. The contract to improve her real estate, to pay taxes and to remove incumbrances upon it, are all for a lawful purpose.

The result is, that having the general and unrestricted power of making any and all contracts in relation to her estate with whomsoever she may choose, she may contract with her husband equally as with any one else. 24 Conn. 500.

It was a contract for the benefit of her separate estate, made to obtain money to remove incumbrances and liens therefrom, and to save it from forfeiture and a forced sale to her loss. In 1853, the wife could hold real and personal property, and had full power to contract for the sale, lease, purchase and preservation and protection of the same. Public Laws, 1852, c. 227, § 1; *Duren* v. *Getchell,* 55 Maine, 241; 3 Allen, 545; *Batchelder* v. *Sargent,* 7 Am. Law Register, 253. A note for the purchase of stock to put on her farm. 30 Maine, 244; 47 Maine, 330.

Under the common law, even a married woman could bind her separate estate, but, in order to create a charge thereon, the intention so to do must be declared in the contract itself, or the consideration must be obtained for the direct benefit of the estate itself. 1 Parsons' Notes & Bills, 78; 22 N. Y. 450; 21 Barb. 286; 17 Vesey, 365; 27 Miss. 347; 2 Kent. 155; 2 Parsons' Contracts, 413.

In the case at bar, both these conditions are fulfilled. In the note itself, Lucy Wyman contracts that it shall be due at her decease, and be payable out of her estate; and by her written statement attached thereto, she acknowledges the receipt of the consideration and the expenditure of the same for the direct benefit of her separate estate. True, the wife could not at common law render herself personally liable on a promissory note or contract, and Mrs. Wyman, in her note complied with this rule. It was not payable until after her death, and then out of her estate. The contract in all points conformed to the strict rules of the

common law; 18 N. Y. 265; 21 Barb. 286; 1 Parsons' Contracts, 368; 10 Ala. 616; 7 Paige, 112; 2 Greene, (Iowa) 435.

As she was invested with the control of her own property, with power to enforce and protect her rights thereto, and to manage the same in 1853, it follows that she had the power at that time to make any contract necessary to its management or for its protection and preservation, and that she would be bound by such contracts. 55 Maine, 241; 47 Maine, 330.

Interest, when expressed in a note, runs from its date. Benjamin Chalmer's Digest, 19; 67 Ill. 238; 8 Cal. 145; 5 Black. 22; 2 Parsons' Notes & Bills, 392. And this too, even if there be other terms implied which may well raise a doubt; 15 Mass. 177; 11 Ind. 392; 1 Iowa, 204. Note payable at death of maker with annual interest. See *Washband* v. *Washband*, 24 Conn. 500.

*E. W. Whitehouse*, defendant *pro se*, cited: *Bryant* v. *Merrill*, 55 Maine, 515; *Ingham* v. *White*, 4 Allen, 412; *Chapman* v. *Kellogg*, 102 Mass. 246; *Bassett* v. *Bassett*, 112 Mass. 99; *Lord* v. *Parker*, 3 Allen, 127; *Dodge* v. *Adams*, 19 Pick. 429; 1 Add. Cont. 16; *Dearborn* v. *Bowman*, 3 Met. 155; *Loomis* v. *Newhall*, 15 Pick. 159; *Angel* v. *McLellan*, 16 Mass. 28; *Allen* v. *Merwin*, 121 Mass. 378; *Strong* v. *Williams*, 12 Mass. 391; 2 Redf. Wills. 185, 187.

*Loring Farr*, for the defendant, cited: Chitty Pl. (16th Am. ed.) *59 *ad fin*; 2 Chitty Pl. 124, note *o*; Oliver, Prec. 182; *Baker* v. *Fuller*, 69 Maine, 152; *Baker* v. *Moor*, 63 Maine, 443; Heard, Civ. Prec. 172, note 2; Rapalje, & L. L. Dict.; 60 Maine, 29; Add. Cont. § § 3, 5; 1 Pars. Cont. 421; 17 Ind. 396; 19 Ind. 212; *Allen* v. *Hooper*, 50 Maine, 371; *Bryant* v. *Merrill*, 55 Maine, 515; 1 Daniel, Neg. Inst. 156; Byles, Bills, *327; 50 Maine, 371; 34 Maine, 566; 141 Mass. 283 (2 New Eng. Rep. 232).

PETERS, C. J. The plaintiff, as indorsee, sues the estate of Lucy Wyman, deceased, to recover the following note: "Vassalboro, February 24, 1853. For value received, I promise

to pay Edward G. Wyman, or order, six hundred dollars with interest annually, payable at my death out of my estate. (Signed) Lucy Wyman." This is a copy of the note as originally given. The note at some time was indorsed to the plaintiff. The original parties to the note, both now deceased, were at its date, husband and wife. On the same paper on which the note was written, the following was also written and signed by the wife. "The above note is given in consideration of six hundred dollars, paid by my husband to my brother John, and sister Betsey, August, 1852, as their full share out of my father's estate."

At common law, and that governs this contract, the note was void. At its date, the statutory changes, affecting the business rights of married women, had not reached that grade of development which would allow the wife to execute commercial paper to any person. *Howe* v. *Wildes*, 34 Maine, 566. Several other cases in this state are to the same effect. Since the date of the note, the barriers which prevented her contracting with persons other than her husband have been removed. And it has been held, that, by the implication of later statutes, husband and wife may even contract with each other, though a remedy for the enforcement of contracts strictly between themselves is not available while the marital relation exists. The remedy may come into life by the death of one of the parties or after their divorce. *Webster* v. *Webster*, 58 Maine, 139 ; *Blake* v. *Blake,* 64 Maine, 177.

These statutory provisions, and their implications, can have no retrospective application, and do not give any validity to a contract which was in its beginning void. *Bryant* v. *Merrill,* 55 Maine, 515. It is readily perceivable that many important contracts would have been subverted, and vested rights impaired, had the construction of the law been otherwise.

In 1868, a transaction took place between Lucy Wyman and her husband, which the plaintiff relies upon as rendering the note valid. They procured a person to sign his name to the two papers, note and memorandum, as a witness. The plaintiff goes so far as to contend that the note was really made at that time and dated back to 1853. It is enough to say, in answer to this

suggestion, that the evidence touching the note, both internal and external disproves it.

The more important inquiry is whether that act of the parties ratified and confirmed the note at that time, giving it validity. We are of opinion that it did not, even if the parties supposed it would have such effect. There was not any new consideration. A void promise continues void. A promise to keep a void promise adds no element of strength. It is a "mere dalliance to excuse the breach of promise." It is written in water.

If the note were merely a voidable contract, having any shade of force, it would be different. But here, by all authority, the contract was and is void, with no spark of vitality in it by which it can be enkindled into life. The parties in 1868, could have made a contract with each other, but there is no evidence that they did so, or that they wanted or undertook to do so. "A contract is void when it is without any legal effect; voidable, when it has some effect; but is liable to be made void by one of the parties or a third person." Bishop, Cont. § 611.

This result need not be regretted for any supposed injustice or inequity. The case shows that the husband must have expected to obtain his annual interest out of the use of her farm, the only property of any consequence she had. That he got his interest as they went along, and greatly more than that is evident. He stripped the place of its valuable wood and timber, sold off the personal property, and reduced the fields to poverty by a systematic and long continued practice of selling the hay taken therefrom. There may be no legal claim upon him or his estate in these matters, but they are evidence that he really suffered but little if any real loss on her account. *In re Blandin,* 1 Low. Dec. 543, 545. And more than all else, while there may not be strict legal proof of the fact, there is great reason to suppose that the wife believed that she was discharging all obligations to her husband by the legacy of six hundred dollars, the same amount for which her note was given, which she provided for him in her will. *Judgment for defendant.*

WALTON, DANFORTH, VIRGIN, EMERY and FOSTER, JJ., concurred.